CITY OF WINSTON-SALEM v. J.R. YARBROUGH AND WIFE, RUTH N. YARBROUGH; JERONE C. HERRING, TRUSTEE, BRANCH BANKING AND TRUST COMPANY; R. LARRY FEIMSTER, TRUSTEE; AND RAMEY, INC.

No. 9321SC688

(Filed 20 December 1994)

**1. Eminent Domain § 103 (NCI4th)— condemnation by municipality—traditional test for unity of lands applicable**

There was no merit to plaintiff's contention that, with respect to condemnation by municipalities, N.C.G.S. § 40A-67 has displaced the traditional test for unity of lands as enunciated in *Barnes v. Highway Commission*, 250 N.C. 378, *i.e.*, substantial unity of ownership, physical unity, and use as an integrated economic unit.

**Am Jur 2d, Eminent Domain § 315.**

**Unity of ownership necessary to allowance of severance damages in eminent domain. 95 ALR2d 887.**

**2. Eminent Domain § 103 (NCI4th)— tracts owned by husband and wife—unity of ownership**

The trial court did not err in finding that substantial unity of ownership existed with regard to seven tracts of land owned by defendant husband and wife, since N.C.G.S. § 40A-2 provides that, for purposes of eminent domain, an owner is any person having an interest or estate in the property; property means any right, title, or interest in land; a person's inchoate dower interest in his spouse's real property in some quality of interest; and defendants each had some interest in the other's land.

**Am Jur 2d, Eminent Domain § 315.**

**Unity of ownership necessary to allowance of severance damages in eminent domain. 95 ALR2d 887.**

**3. Eminent Domain § 104 (NCI4th)— tracts held for future development—present unity of use**

The trial court properly found that defendants' tracts of land which defendants were holding for future development were being presently used in the same manner, and the court thus correctly concluded that the tracts were unified in use.

**Am Jur 2d, Eminent Domain § 315.**

**CITY OF WINSTON-SALEM v. YARBROUGH**

[117 N.C. App. 340 (1994)]

**Unity of ownership necessary to allowance of severance damages in eminent domain. 95 ALR2d 887.**

**4. Pleadings § 378 (NCI4th)— amendment of counterclaim— claims futile—denial of amendment proper**

The trial court did not err in denying defendants' motion to amend their answer to add individual members of plaintiff condemnor's board of aldermen as parties to their counterclaim, since an amendment claiming individual liability of aldermen in the ratification of a contract would be futile. Nor did the trial court err in denying defendants' motion to amend their answer to assert a claim against the city attorney for negligent misrepresentation absent an allegation that plaintiff city waived its sovereign immunity by the purchase of liability insurance.

**Am Jur 2d, Pleading §§ 306 et seq.**

Appeals by plaintiff and defendants from orders entered 28 April 1993 by Judge F. Fetzer Mills in Forsyth County Superior Court. Heard in the Court of Appeals 10 March 1994.

Plaintiff instituted these actions to exercise its power of eminent domain and acquire three parcels of land for the construction of a new public road, pursuant to Chapter 40A of the General Statutes. Defendants Ruth and J.R. Yarbrough (defendants) answered the complaints, alleging that the three tracts named in the complaints were being used with four other tracts as an integrated economic unit which would be adversely affected by the taking. In addition, defendant J.R. Yarbrough (Yarbrough) asserted a counterclaim against plaintiff for the breach of an alleged agreement regarding the construction and exact location of a road project which had been abandoned in favor of the project giving rise to the instant condemnation actions.

On 22 October 1992, plaintiff filed a motion to dismiss the counterclaim, asserting that the statute of limitations barred Yarbrough's breach of contract claim. Plaintiff amended its motion to dismiss to include an assertion that the alleged agreement was *ultra vires*, void and therefore unenforceable against plaintiff. Following a hearing, in an order entered 4 January 1993, Judge James A. Beaty, Jr. denied the motion to dismiss.

On 2 March 1993, defendants moved the court to determine all issues raised by the pleadings other than the issue of compensation, pursuant to N.C. Gen. Stat. § 40A-47 (1984). On 4 March 1993, defend-

ants filed a motion to amend their answer, seeking to add a claim for *quantum meruit* against plaintiff and to add claims for breach of contract against the members of the Board of Aldermen at the time of the alleged agreement and a claim for negligent misrepresentation against the city attorney, Ronald Seeber (Seeber).

The trial court held hearings on defendants' motions on 19 April 1993. On 28 April 1993, the court entered an order allowing defendants to add a *quantum meruit* claim but denying the motion to add additional counterclaim defendants. From this order, defendants appeal. That same day, the court also entered an order concluding that six of the seven parcels should be treated as a single tract for purposes of compensation. From this order, plaintiff appeals.

*City Attorney Ronald. G. Seeber and Assistant City Attorney Charles C. Green, Jr. and Womble, Carlyle, Sandridge & Rice, by Roddey M. Ligon, Jr. and Gusti W. Frankel, for plaintiff-appellant.*

*Petree Stockton, by G. Dudley Humphrey, F. Joseph Treacy, Jr. and Charles H. Rabon, Jr., for defendant-cross-appellants.*

McCRODDEN, Judge.

### Plaintiff's Appeal

Plaintiff brings forward four assignments of error and four arguments in support thereof. Each of plaintiff's arguments concerns the trial court's determination that defendants' parcels should be treated as one tract for purposes of compensation. We find no merit in plaintiff's arguments.

Municipalities such as plaintiff are empowered to condemn property for, among other things, the opening of roads. N.C. Gen. Stat. § 40A-3 (1984). This power is subject, of course, to the requirement that the municipality provide just compensation to the owner of the property to be taken. *Mount Olive v. Cowan,* 235 N.C 259, 69 S.E.2d 525 (1952). When, as here, a portion of a tract is to be taken, the measure of just compensation is the amount by which fair market value of the entire tract immediately before the taking exceeds the fair market value of the remainder immediately after the taking, or the fair market value of the portion actually taken. N.C. Gen. Stat. § 40A-64 (1984). For purposes of determining a property owner's damages, "all contiguous tracts of land that are in the same ownership and are being used as an integrated economic unit shall be treated as if the

combined tracts constituted a single tract." N.C. Gen. Stat. § 40A-67 (1984).

[1] Plaintiff's first argument is that the trial court used the wrong test in determining that the defendants' lands constituted a single tract. The court concluded "that as to the lands owned by [defendants] . . . there is substantial unity of ownership . . . there is physical unity . . . [and] the lands . . . are (and were at the time of taking) being used as an integrated economic unit."

In reaching these conclusions, the court applied the traditional test for unity of lands, as enunciated in *Barnes v. Highway Commission*, 250 N.C. 378, 109 S.E.2d 219 (1959):

> The factors most generally emphasized are unity of ownership, physical unity and unity of use. . . . Usually unity of use is given greatest emphasis.
>
> The parcels claimed as a single tract must be owned by the same party or parties. It is not a requisite for unity of ownership that a party have the same quantity or quality of interest or estate in all parts of the tract. . . . [T]here must be a substantial unity of ownership.
>
> The general rule is that parcels of land must be contiguous in order to constitute them a single tract for severance damages and benefits. . . .
>
> As indicated above, the factor most often applied and controlling in determining whether land is a single tract is unity of use. Regardless of contiguity and unity of ownership, ordinarily lands will not be considered a single tract unless there is unity of use.

*Id.* at 384-85, 109 S.E.2d at 224-25.

Plaintiff observes that the condemnation actions in *Barnes* and subsequent cases which have followed its reasoning were instituted pursuant to Chapter 136 of the General Statutes. *See Barnes; N.C. Dept. of Transportation v. Kaplan*, 80 N.C. App. 401, 343 S.E.2d 182, *disc. review denied*, 317 N.C. 705, 347 S.E.2d 437 (1986); *City of Winston-Salem v. Tickle*, 53 N.C. App. 516, 281 S.E.2d 667 (1981), *disc. review denied*, 304 N.C. 724, 288 S.E.2d 808 (1982); *and Board of Transportation v. Martin*, 296 N.C. 20, 249 S.E.2d 390 (1978). Plaintiff then concedes that with regard to condemnation by the Department of Transportation, this test is still applicable, but, argues

that, with respect to condemnation by municipalities, section 40A-67 has displaced the traditional *Barnes* test. We disagree.

We must assume that the General Assembly is fully aware of all prior and existing law when it enacts legislation on the same subject. *Ridge Community Investors, Inc. v. Berry*, 293 N.C. 688, 695, 239 S.E.2d 566, 570 (1977). When interpreting the General Statutes, our primary rule of construction is that the intention of the legislature controls. *Stevenson v. City of Durham*, 281 N.C. 300, 303, 188 S.E.2d 281, 283 (1972).

N.C.G.S. § 40A-67 requires that the lands which are sought to be joined for purposes of compensation be under the "same ownership," while the *Barnes* test requires that there be "substantial unity of ownership." To read these phrases as having different meanings would lead to an absurd result: Whether lands were considered together for compensation might depend on whether the property was being condemned by a municipality or the State. We must presume that the legislature acted with reason and common sense and that it did not intend such an unjust result. *King v. Baldwin*, 276 N.C. 316, 325, 172 S.E.2d 12, 18 (1970). We believe that the General Assembly, in enacting N.C.G.S. § 40A-67, intended merely to codify the long standing common law test. Hence, we find that the trial court applied the proper test, and we reject plaintiff's first argument.

In its next three arguments, plaintiff takes issue with the trial court's conclusions as to each of the three elements of the *Barnes* test.

[2] As to the unity of ownership portion of the test, the trial court found:

All of the lands sought to be joined by defendants in this action pursuant to N.C. Gen. Stat. § 40A-67 are owned by the Yarbroughs. Ruth N. Yarbrough has some quantity and quality of interest and estate in the lands of her husband, J.R. Yarbrough; and J.R. Yarbrough has some quantity and quality of interest and estate in the lands of his wife, Ruth N. Yarbrough. Although the City contended that spousal interests under N.C. Gen. Stat. § 29-30 are not sufficient to constitute an interest and estate in land for purposes of unity of ownership, the Court disagrees and finds that substantial unity of ownership exists with regard to the Yarbroughs' land and notes that the City itself sued the non-title owner spouse in Case numbers 92-CVS-1551 and 92-CVS-1552

because of their interests under § 29-30. In addition, the Yarbroughs offered the Affidavit of J.R. Yarbrough which amply demonstrated that he and his wife were engaged in a common plan of development for the property that was owned both in their separate and joint names in an informal partnership. The City offered no evidence to the contrary. The Court therefore finds that substantial unity of ownership exists with regard to all tracts sought to be included by the Yarbroughs.

N.C. Gen. Stat. § 40A-2 (1984) provides that, for purposes of eminent domain, an owner is "any person having an interest or estate in the property," and property means "*any* right, title, or interest in land." (Emphasis added). N.C. Gen. Stat. § 29-30 (1984) provides that, in lieu of taking his intestate share, a surviving spouse may take a life estate in one third in value of all of the real estate owned by his spouse during the time they were married, subject only to a few exceptions. This section preserves the benefits of the former rights of curtesy and dower. *Taylor v. Bailey*, 49 N.C. App. 216, 219, 271 S.E.2d 296, 298 (1980). While both spouses are alive, the dower interests are inchoate. "An inchoate dower interest is not an estate in land nor a vested interest, but nevertheless, it acts as an encumbrance upon real property." *Id.* Although it has been said that an inchoate dower interest is not properly denominated a future interest, Lewis M. Simes, *The Law of Future Interests* § 2 at 3 (1966), it is, nonetheless, a "substantial right of property." *Shelton v. Shelton*, 83 S.E.2d 176, 177 (S.C. 1954). We conclude that a person's inchoate dower interest in his spouse's real property is "some quality" of interest, *see City of Winston-Salem v. Tickle*, 53 N.C. App. 516, 281 S.E.2d 667 (1981), and defendants each had some interest in the other's land. Accordingly, we find that the trial court properly determined that there was substantial unity of ownership among the tracts.

[3] Next plaintiff argues that the trial court erred in determining that there was unity of use among the defendants' tracts. We disagree.

The trial court found that the parcels at issue "are, and were at the time of the taking, zoned for multi-family development and are (and were at the time of taking) being held for development under a common plan and scheme."

As stated previously, the *Barnes* test for unity of use is the applicable standard. Plaintiff argues that defendants' tracts may not be considered unified in use because they were not being actively used at all.

In *Barnes*, the Court stated:

> It has been said that "there must be such a connection or relation of adaptation, convenience, and actual and permanent use, as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcel left, in the most advantageous and profitable manner in the business for which it is used." The unifying use must be a *present* use. A mere intended use cannot be given effect.

250 N.C. at 385, 109 S.E.2d at 225 (citation omitted). The *Barnes* Court found that the trial court had properly joined the petitioners' parcels, despite the fact that "[n]o actual present use was being made of the tracts at the time of the taking. The petitioners were holding the land for possible future sale for subdivision or for future sale of lots." *Id.* at 386, 109 S.E.2d at 226. Thus, the Court decided, *sub silentio*, that holding property for anticipated development is a present use. We believe that *Board of Transportation v. Martin*, 296 N.C. 20, 249 S.E.2d 390, which plaintiff cites for the proposition that holding land for future development is not a present use for purposes of the *Barnes* test, is not to the contrary. In *Martin*, one of the parcels sought to be joined was developed and occupied by a shopping center, while the other tract was undeveloped, although the owner planned to develop it as part of the shopping center. 296 N.C. at 30, 249 S.E.2d at 397. The Court found that there was no unity of use between those two tracts because the undeveloped tract was not presently being used in the same manner as the developed tract. *Id.* However, we believe that *Martin* merely stands for the proposition that the uses must be the same, not that they must be active.

Following *Barnes*, we conclude that the defendants' tracts, which defendants were holding for future development, were being presently used in the same manner. Thus, the trial court correctly concluded that the tracts were unified in use, or, in the language of section 40A-67, were "being used as an integrated economic unit."

Finally, plaintiff argues that the court erred in concluding that the tracts are contiguous. Yet, plaintiff concedes that the tracts "abut each other in succession." This admission is fatal to plaintiff's contention. We find that the tracts are contiguous and reject plaintiff's final argument.

Thus, the trial court correctly found that there was substantial unity of ownership, that the tracts were being used as an integrated

economic unit, and that the tracts were contiguous. It properly united the tracts for compensation.

### Defendants' Appeal

**[4]** Defendants assign error to the trial court's denial of their motion to amend the answer to add parties in their counterclaim. They offer one argument which we reject.

First, however, we must address plaintiff's motion to dismiss defendants' appeal. Plainly, the trial court's order denying the motion to amend was interlocutory, since it did not determine the entire controversy. *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381, *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). As the issue was not certified by the trial judge pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b) (1990), the order is immediately appealable only if it affects a substantial right. N.C. Gen. Stat. §§ 1-277 (1983), 7A-27(d) (1989).

Defendants' claim against the individual members of the Board of Aldermen was made as an alternative to its claim for breach of contract. Had the court determined that the contract was void as *ultra vires*, then defendants would have sought to recover against the individual board members. If these alternative theories were not joined, defendants would face the possibility of inconsistent verdicts on the same factual issue in separate trials. We find that, in this case, the avoidance of such a possibility is a substantial right which would be prejudiced by delaying the defendants' appeal. *See Davidson v. Knauff Ins. Agency*, 93 N.C. App. 20, 25, 376 S.E.2d 488, 491, *disc. review denied*, 324 N.C. 577, 381 S.E.2d 772 (1989). We deny plaintiff's motion to dismiss, and address the merits of defendants' appeal.

Since plaintiff had responded to defendants' original counterclaim, defendants could only amend their answer by leave of the court. N.C.R. Civ. P. 15(a). Generally, trial courts are to grant such amendments freely. *Mauney v. Morris*, 316 N.C. 67, 72, 340 S.E.2d 397, 400 (1986). A motion to amend, however, is addressed to the sound discretion of the trial court and we will not disturb its ruling absent a clear showing of abuse of this discretion. *Hassett v. Dixie Furniture Co.*, 104 N.C. App. 684, 688, 411 S.E.2d 187, 190 (1991), *rev'd on other grounds*, 333 N.C. 307, 425 S.E.2d 683 (1993).

From the face of the order, we cannot determine the trial court's reason for denying the motion. This, however, will not preclude our examining any apparent reasons for the denial. *Martin v. Hare*, 78 N.C. App. 358, 361, 337 S.E.2d 632, 634 (1985). Reasons which might

justify such a denial include the futility of a proposed amendment. *Id.* Where the facts alleged in a proposed amendment would not state a claim for relief, it is not error to deny the motion to amend. *Smith v. McRary*, 306 N.C. 664, 666, 295 S.E.2d 444, 445 (1982). In this case, we believe that the trial court did not abuse its discretion in denying the motion because the facts alleged in the proposed amendment would not state a claim for relief against any of the individual counterclaim defendants.

Defendants alleged in their proposed amendment that "[t]he Counterclaim Defendants are being named as defendants herein in their individual capacities rather than their official or representative capacities as Aldermen or City Attorney for the City of Winston-Salem." This allegation is not controlling, however. We must "inspect the text of the complaint as a whole to determine the true nature of the claim." *Taylor v. Ashburn*, 112 N.C. App. 604, 607, 436 S.E.2d 276, 279 (1993), *cert. denied*, 336 N.C. 77, 445 S.E.2d 46 (1994). In the absence of any allegations in the complaint separate and apart from official duties which would hold a non-official liable, the complaint cannot be found to state a claim against defendants individually. *Whitaker v. Clark*, 109 N.C. App. 379, 383-84, 427 S.E.2d 142, 145, *disc. review denied and cert. denied*, 333 N.C. 795, 431 S.E.2d 31 (1993). We have reviewed the proposed amendment and find that all of the relevant factual allegations concern the performance by the individual defendants of their official duties. Accordingly, we will address the proposed counterclaims as claims against the individual defendants in their official capacities.

When the government enters into a contract, it implicitly waives its immunity from an action on that contract. *Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 423-24 (1976). This does not mean, however, that the aldermen may be held liable on the contract. Although they approved the alleged contract with defendants, the aldermen were no more parties to that agreement than "the president of a corporation is a party to the contract he executes in his official capacity for the corporation." *Id.* at 332, 222 S.E.2d at 431.

In a case strikingly similar to the one at hand, *Jenkins v. Henderson*, 214 N.C. 244, 199 S.E. 37 (1938), our Supreme Court held that aldermen of the town of Henderson could not be held liable on a contract to grade the plaintiff's lot to the street level when such a contract was *ultra vires* to the town. The Court relied on agency principles, stating:

CITY OF WINSTON-SALEM v. YARBROUGH

[117 N.C. App. 340 (1994)]

There is no implied warranty by an agent that his principal has authority to make a contract signed by the agent; and the agent, acting within the scope of his authority, is not answerable upon such a contract where his principal is not bound by it merely because he had no authority to enter into the particular contract.

*Id.* at 247, 199 S.E. at 39.

As was the case in *Jenkins*, the purported contract here was between defendants and the municipal plaintiff, and the aldermen were acting within their authority to approve contracts entered into by the plaintiff. Defendants could not hold the aldermen liable on the alleged agreement, and an amendment that added a claim to that effect would be futile.

Likewise, defendants' proposed counterclaim would not state a claim against Seeber for negligent misrepresentation. For purposes of sovereign immunity, a claim against a public official in his official capacity is a suit against the public body he represents. *Truesdale v. University of North Carolina*, 91 N.C. App. 186, 193, 371 S.E.2d 503, 507 (1988), *disc. review denied*, 323 N.C. 706, 377 S.E.2d 229 (1989), *cert. denied*, 493 U.S. 808, 107 L. Ed. 2d 19 (1989), *overruled in part on other grounds in Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276 (1992). A city attorney is a public officer; his position is a creation of statute, N.C. Gen. Stat. § 160A-173 (1987) (the governing body of a municipality "shall appoint a city attorney to serve at its pleasure and to be its legal adviser"), and his job, the rendering of legal opinions, involves the exercise of personal deliberation, decision and judgment. *See Hare v. Butler*, 99 N.C. App. 693, 700, 394 S.E.2d 231, 236, *disc. review denied*, 327 N.C. 634, 399 S.E.2d 121 (1990).

After reviewing the proposed amended answer, we observe that defendants have not alleged that the municipal plaintiff waived its sovereign immunity by the purchase of liability insurance. Such an omission renders their claim for negligence against Seeber in his official capacity fatally deficient. *Fields v. Board of Education*, 251 N.C. 699, 701, 111 S.E.2d 910, 912 (1960).

We conclude that the defendants' proposed amendment would have been futile because it would have stated no claim for relief. The trial court properly denied defendants' motion to amend their answer.

WOOTEN v. WARREN

[117 N.C. App. 350 (1994)]

In summary, we affirm each of the actions of the trial court.

Affirmed.

Judges EAGLES and MARTIN concur.

Opinion written and concurred in prior to 16 December 1994.