DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellee v. THE NELSON COM-
PANY, a North Carolina General Partnership; TIM, INC., Substitute Trustee;
and NATIONSBANK (formerly NCNB National Bank of North Carolina),
Defendants-Appellants

No. COA96-777

(Filed 2 September 1997)

**1. Eminent Domain § 103 (NCI4th)— condemnation—multi-
ple parcels—treatment as unified tract—factors**

North Carolina considers three factors in determining
whether two or more parcels of land should be considered as one
unified tract on the date of a taking: (1) unity of ownership
between the parcels; (2) unity of use between the parcels; and (3)
physical unity between the parcels.

**2. Eminent Domain § 103 (NCI4th)— condemnation—multi-
ple parcels—unity of ownership—partnerships**

The trial court erred in a land condemnation action involving
an office park by concluding that there was no unity of ownership
between two parcels where the parcels were owned by two part-
nerships and it was undisputed that eleven of the thirteen part-
ners that made up the two partnerships owned an interest in both
parcels. *Board of Transportation v. Martin*, 296 N.C. 20, can be
distinguished because one parcel there was owned by an individ-
ual and the adjacent parcel was owned by a corporation of which
the individual was the sole shareholder. Here, each general part-
ner has an ownership interest in partnership property along with
the other partners.

**3. Eminent Domain § 104 (NCI4th)— condemnation—multi-
ple tracts—unity of use—uncompleted office complex**

The trial court erred in a condemnation action in concluding
that there was no unity of use for tracts of property which were
part of a master development plan conceived as an integrated
office complex with offices and a myriad of conveniences but
which was only partially completed at the time the action was
filed. *Board of Transportation v. Martin*, 296 N.C. 20, is distin-
guishable because the plan to expand the shopping center in that
case arose after the shopping center was completed and fully
functional, while the plan for both parcels here was conceived
and approved before construction began. The undeveloped par-
cel here is being used in the same manner as the developed par-

cel, as part of the continuing implementation of an original, pre-existing office park development scheme; concluding that no unity exists here would overlook the reality that commercial development is typically completed in phases.

Appeal by defendant The Nelson Company from order entered 29 March 1996 by Judge Henry V. Barnette, Jr., in Durham County Superior Court. Heard in the Court of Appeals 27 February 1997.

*Michael F. Easley, Attorney General, by Archie W. Anders and Emmett B. Haywood, Assistant Attorney Generals, for the Department of Transportation.*

*Maupin Taylor Ellis & Adams, P.A., by John C. Cooke and William J. Brian, Jr., for defendant The Nelson Company.*

WYNN, Judge.

The North Carolina Department of Transportation ("DOT") brought this land condemnation action to acquire a portion of Creekstone Office Park ("Creekstone") in Durham County, North Carolina.

Creekstone consists of: (1) a day care owned by a national day care operator; (2) an undeveloped site owned by defendant The Nelson Company ("Nelson parcel"), a North Carolina General Partnership; and (3) a lot with an office building located on it, owned by Riverbirch Associates ("Riverbirch parcel"), a North Carolina General Partnership. All eleven general partners of Nelson are general partners in Riverbirch which has two additional general partners.

In June 1994, DOT filed its taking map, a plat of the property affected for purposes of assessing damages. The taking map did not include the Riverbirch parcel (i.e., the site with the existing office building) as part of the property affected by the taking. When this matter was set for trial, Nelson refused to stipulate to the accuracy of DOT's taking map on the grounds that the Riverbirch parcel was not included as part of the affected property, and moved that the map be amended accordingly. In August 1994, the trial court denied Nelson's motion on the grounds that there was not sufficient unity of lands between the Nelson parcel and the Riverbirch parcel to treat them as one for the purposes of the condemnation. Nelson appeals from this ruling.

DEPT. OF TRANSPORTATION v. NELSON CO.

[127 N.C. App. 365 (1997)]

**[1]** North Carolina considers three factors in determining whether on the date of a taking, two or more parcels of land should be considered as one unified tract: (1) unity of ownership between the parcels; (2) unity of use between the parcels; and (3) physical unity between the parcels. *Barnes v. North Carolina State Highway Comm'n*, 250 N.C. 378, 384, 109 S.E.2d 219, 224-25 (1959).

In the instant case, there is no dispute that physical unity exists between the Riverbirch and Nelson parcels. Therefore, the only issues before this Court are: (I) whether there is unity of ownership; and (II) whether there is unity of use between the two parcels. For the following reasons, we find that both unity of ownership and unity of use exist between the two parcels.

## I. Unity of Ownership

**[2]** In *Barnes*, our Supreme Court explained the unity of ownership requirement as follows:

> The parcels claimed as a single tract must be owned by the same party or parties. It is not a requisite for unity of ownership that a party have the same quantity or quality of interest or estate in all parts of the tract. But where there are tenants in common, *one or more of the tenants must own some interest and estate in the entire tract.*

*Id.* at 384, 109 S.E.2d at 225 (emphasis added).

In the instant case, it is undisputed that eleven of the thirteen partners that make up the two partnerships own an interest in both parcels. Nevertheless, it appears that the trial court held there was no unity of ownership based upon its interpretation of *Board of Transportation v. Martin*, 296 N.C. 20, 249 S.E.2d 390 (1978), in which our Supreme Court held that unity of ownership did not exist where one parcel was owned by an individual and an adjacent parcel was owned by a corporation of which the individual was the sole shareholder. However, in *Martin*, the property was owned by the corporation, a legal entity, totally separate from the individual shareholder. In contrast, in the instant case, each general partner has an ownership interest in partnership property along with the other partners. *See* N.C. Gen. Stat § 59-55(a) (1996); *Simmons v. Quick-Stop Food Mart, Inc.*, 307 N.C. 33, 296 S.E.2d 275 (1982). We, therefore, find *Martin* distinguishable and conclude that the trial court should have found that unity of ownership exists in the instant case.

## II. Unity of Use

[3] The legal standard for unity of use is whether the tracts of land "are being used as an integrated economic unit." N.C. Gen. Stat. § 40A-67 (1996). In *City of Winston-Salem v. Yarbrough*, 117 N.C. App. 340, 346, 451 S.E.2d 358, 363, *disc. review denied*, 340 N.C. 260, 456 S.E.2d 519 (1995), this Court noted that N.C.G.S. § 40A-67 intended to codify the longstanding common law test for unity of use announced in *Barnes:*

> [T]here must be such a connection or relation of adaptation, convenience, and actual and permanent use, as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcel left, in the most advantageous and profitable manner in the business for which it is used . . . The unifying use must be a *present* use. A mere intended use cannot be given effect.

250 N.C. at 385, 109 S.E.2d at 224 (citation omitted).

An office park is defined as "[a] development . . . that contains a number of separate office buildings, supporting uses, and open space designed, planned, constructed, and managed on an integrated and coordinated basis." H. Moscowitz & C. Lindbloom, *The Illustrated Book of Development Definitions*, at 135 (Center for Urban Policy Research, 1981). The master development plan for Creekstone Office Park certainly fits this characterization: Creekstone was conceived as an integrated office complex which provides not only office space but also a myriad of conveniences—including banks, restaurants, and a day care center—for its office personnel. It is patently clear that had Creekstone Office Park been completed, it would have been considered an "integrated economic unit," thereby meeting the unity of use requirement. Thus, the only remaining question is whether a partially-completed office park still meets the unity of use requirement. We find that it does.

In *Barnes*, our Supreme Court held that the trial court had properly joined the petitioners' parcels, despite the fact that "[n]o actual present use was being made of the tracts at the time of the taking. The petitioners were holding the land for possible future sale for subdivision or for future sale of lots." 250 N.C. at 386, 109 S.E.2d at 226. "Thus, the [*Barnes*] Court decided, *sub silentio*, that holding property for anticipated development is a present use." *Yarbrough*, 117 N.C. App. at 346, 451 S.E.2d at 363. Likewise in *Yarbrough*, this Court,

**DEPT. OF TRANSPORTATION v. NELSON CO.**

[127 N.C. App. 365 (1997)]

relying on *Barnes*, concluded that three tracts of land condemned by the City of Winston-Salem were being used with four other tracts as an "integrated economic unit" even though "defendants were holding [the three tracts] for future development." *Id.*

In this case, although the Nelson parcel remains basically undeveloped, the master development plan establishes a finite number of proposed uses for the tract which will be essential to the enjoyment and best use of the Riverbirch Parcel. Nevertheless, plaintiff relies heavily on *Board of Transportation v. Martin*, 296 N.C. 20, 249 S.E.2d 390, in which the Supreme Court held that there was no unity of use where one of the parcels sought to be joined was developed and occupied by a shopping center, while the other adjacent lot was undeveloped, although the owner planned to develop it as part of the shopping center. However, *Martin* is distinguishable because the plan to expand the shopping center in *Martin* arose after the shopping center was completed and fully functional. Here, however, the plan for the use of both the Nelson and Riverbirch parcels was conceived and approved before any actual construction began. Thus, the undeveloped Nelson parcel is presently being used in the same manner as the developed Riverbirch tract—it is part of the continuing implementation of an original, pre-existing office park development scheme. *See Barnes*, 250 N.C. at 385, 109 S.E.2d at 225-26 (holding that "[i]f a map of a proposed subdivision is made and the lots shown thereon are actually a compact body of land, used and occupied as an entirety, they are to be treated as one tract").

Concluding that no unity of use exists here would overlook the inherent reality of commercial development, namely that it is typically completed in phases. By not recognizing this reality, we would be asking future developers, in order to meet the unity of use requirement, to begin construction on all phases before completing any one phase. Because this is impractical both from the standpoint of the developer and from the standpoint of the commercial creditor who finances the construction, this practice should not be encouraged by the courts.

In sum, the trial court's finding that there is no unity of ownership nor unity of use between the Riverbirch and Nelson parcels is reversed and this matter is remanded in order to allow the trial court to amend the taking map.

IN RE HUNT

[127 N.C. App. 370 (1997)]

Reversed and remanded.

Judges LEWIS and MARTIN, Mark D., concur.