**TOWN OF HILLSBOROUGH v. CRABTREE**

[143 N.C. App. 707 (2001)]

Reversed and remanded.

Judges BIGGS and SMITH concur.

————

TOWN OF HILLSBOROUGH, Plaintiff v. HERBERT CRABTREE, ET AL., Defendants

No. COA00-527

(Filed 5 June 2001)

**1. Eminent Domain— condemnation for reservoir—just compensation—fourteen separate tracts of land**

The trial court did not err by concluding that plaintiff town's condemnation of defendants' property for development of a new reservoir was a taking of fourteen separate tracts of land instead of a single tract of approximately 150 acres for the purpose of determining just compensation, because: (1) defendants had subdivided the property into fourteen lots and had accomplished numerous improvements and developments to the property before plaintiff publicly announced that defendants' property was being considered as the site of a new reservoir; (2) upon such announcement, defendants ceased developing the property for five years before plaintiff instituted action; and (3) plaintiff cannot now claim that defendants' cessation of development and failure to sell any of the lots demonstrates that defendants' property was not an actual existing subdivision.

**2. Eminent Domain— condemnation for reservoir—just compensation—not a partial taking**

N.C.G.S. § 40A-67 does not mandate that the interest plaintiff town acquired in defendants' property in a condemnation proceeding for development of a new reservoir was the taking of a single tract of land for the purposes of determining just compensation, because: (1) this statute and the common law "unity rule" have only been applied to cases involving partial takings; and (2) the trial court's finding that this case was not a partial takings case is supported by competent evidence.

Plaintiff appeals from order entered on 28 January 2000 by Judge James C. Davis in Orange County Superior Court. Heard in the Court of Appeals 15 March 2001.

*The Brough Law Firm, by G. Nicholas Herman, for plaintiff-appellant.*

*Coleman, Gledhill & Hargrave, P.C., by Geoffrey E. Gledhill and Harmony Whalen, for defendants-appellees.*

TYSON, Judge.

In 1977, Herbert I. Crabtree and Alene C. Holloway ("defendants") acquired approximately 150 acres of rural, undeveloped farm land in Orange County ("property") from their father. In 1991, defendants began work to develop the property into a residential subdivision. Among other things, defendants (1) surveyed the boundary of the property; (2) ordered soil analyses done by the Orange County Health Department to determine the property's suitability for septic systems; (3) obtained approval for the location of septic systems on each lot; (4) installed and upgraded underground electrical service; (5) contracted for the provision of electrical service; (6) constructed a new road and improved an existing road providing access to the property; (7) recorded a subdivision plat of the property entitled "Eno West Fork" depicting 14 separate lots; (8) obtained separate Parcel Identification Numbers for each lot; and (9) paid separate tax bills for each lot for five years. Each of the 14 lots were over ten acres, bordered a public road, and had frontage on the Eno River. Defendants also intended to reserve lots for their own use.

In November 1992, defendants learned that their property was under consideration by the City of Hillsborough ("plaintiff") as the site of plaintiff's new reservoir. Defendants ceased developing their property upon learning it was under consideration for the new reservoir. Nearly four years later, on 17 July 1996, defendants received "official notice" of plaintiff's intent to acquire their property for the new reservoir. On 13 January 1997, plaintiff authorized the acquisition of defendants' property.

Nearly a year after defendants received "official notice," on 20 June 1997, plaintiff filed an action in Orange County Superior Court to condemn the property. Defendants answered the complaint on 21 October 1997, and prayed, *inter alia*, for a jury trial on the issue of just compensation. On 20 September 1999, plaintiff filed a pretrial motion to have the trial court determine the interest in the property taken and the proper measure of compensation for the interest in the property taken. Plaintiff sought to have the property treated as a single tract of land for the purposes of valuation. Defendants argued

TOWN OF HILLSBOROUGH v. CRABTREE

[143 N.C. App. 707 (2001)]

that the property was made up of 14 separate lots at the time of the condemnation. On 28 January 2000 the trial court ordered:

1. The Town in this action condemned all 14 lots in the Eno West Fork, which subdivision is depicted on a plat recorded at Plat Book 59, Page 157 of the Orange County Registry.

2. That at the time of the taking, the property taken by the Town in this action did not constitute a single tract of land for the purposes of valuation.

3. At the trial of this action on the issue of just compensation, otherwise admissible evidence may be introduced as to the value, at the time of taking, of each of the 14 lots condemned by the Town.

Plaintiff appeals.

---

[1] Plaintiff assigns as error the trial court's conclusion that plaintiff's condemnation of defendants' property was a taking of 14 separate tracts of land for the purpose of determining compensation. Plaintiff contends, as it did in the trial court, that the condemnation was a taking of a single tract of approximately 150 acres. We disagree, and affirm the trial court's order.

Plaintiff argues that the property must be treated as a single tract for compensation purposes because defendants' property is merely a "paper" or "imaginary" subdivision. As a "paper" subdivision, plaintiff asserts that the 14 individual lots should be ignored and the property treated as a single tract for purposes of compensation.

In support of its argument, plaintiff cites the landmark case of *Barnes v. N.C. State Highway Comm'n*, 250 N.C. 378, 109 S.E.2d 219 (1959). In *Barnes*, the State Highway Commission condemned a portion of landowner's property in order to relocate and improve U.S. Highways 158 and 421 in Winston-Salem. Prior to the condemnation, the landowner had not taken steps to develop the property. Landowner attempted to establish the value of his condemned property by the introduction of plats drafted "<u>after</u> the taking of the property." *Id.* at 386, 109 S.E.2d at 226. The plats depicted the property as a subdivision with mixed business and residential uses. Our Supreme Court held that:

'It is well settled that if land is so situated that it is actually available for building purposes, its value for such purposes may be

considered, even if it is used as a farm or is covered with brush and boulders. The measure of compensation is not, however, the aggregate of the prices of the lots into which the tract could be best divided, since the expense of cleaning off and improving the land, laying out streets, dividing it into lots, advertising and selling the same, and holding it and paying taxes and interest until all of the lots are disposed of cannot be ignored and is too uncertain and conjectural to be computed.' Nichols on Eminent Domain (3rd Edition), Vol. 4, section 12.3142 (1), pp. 107-109. It is proper to show that a particular tract of land is suitable and available for division into lots and is valuable for that purpose, but it is not proper to show the number and value of lots as separated parcels in an <u>imaginary subdivision</u> thereof. In other words, it is not proper for the jury in these cases to consider an <u>undeveloped tract</u> of land as though a subdivision thereon is an accomplished fact. Such <u>undeveloped property</u> may not be valued on a per lot basis.

*Id.* at 388-89, 109 S.E.2d at 228 (emphasis supplied).

The facts of the present case are clearly distinguishable from the facts in *Barnes*. Prior to notice of the condemnation, defendants (1) surveyed and subdivided the property into 14 separate lots all with road access and frontage on the Eno River; (2) ordered soil analyses done by the Orange County Health Department to determine the property's suitability for septic systems; (3) obtained approval for the location of septic systems on each lot; (4) installed and upgraded underground electrical service; (5) contracted for the provision of electrical service; (6) constructed a new road and improved an existing road providing access to the property; and (7) recorded a plat of the subdivision. In 1993, Orange County assigned separate Parcel Identification Numbers for each lot, and defendants paid separate tax bills for each lot for five years. All of these actions demonstrate that the defendants' property was not an "imaginary subdivision" like the landowner's property in *Barnes*. To the contrary, defendants' plan to develop a rural Orange County residential development had been accomplished.

Nonetheless, plaintiff argues that defendants' failure to market and sell any of the lots necessitates a finding that the property is a "paper" subdivision. This argument ignores the fact that <u>plaintiff's</u> actions prevented defendants from further developing the lots.

Defendants accomplished all of the above-listed improvements and developments before plaintiff publically announced that defendants' property was being considered as the site of the new reservoir. Upon such announcement, defendants ceased developing the property for five years before plaintiff instituted action. Plaintiff cannot now claim that defendants' cessation of development and failure to sell any of the lots demonstrates that defendants' property was not an actual, existing subdivision.

**[2]** Plaintiff also argues in its brief to this Court that N.C.G.S. § 40A-67 mandates that the interest it acquired in defendants' property was the taking of a single tract of land. Plaintiff's reliance on N.C.G.S. § 40A-67 is misplaced.

N.C.G.S. § 40A-67 (1999) provides:

> For the purposes of determining just compensation under this Article, all contiguous tracts of land that are in the same ownership and are being used as an integrated economic unit shall be treated as if the combined tracts constitute a single tract.

This statute is a codification of a portion of the common law of condemnation known as the "unity rule." *City of Winston-Salem v. Yarbrough*, 117 N.C. App. 340, 344, 451 S.E.2d 358, 362 (1994), *cert. denied*, 340 N.C. 110, 456 S.E.2d 311 (1995), *cert. denied*, 340 N.C. 260, 456 S.E.2d 519 (1995). All the cases applying N.C.G.S. § 40A-67 and the common law "unity rule" cited by plaintiff to this Court are "partial taking" cases. At oral arguments, plaintiff conceded that N.C.G.S. § 40A-67 and the "unity rule" have only been applied to cases involving "partial takings."

The trial court found that this case was not a partial takings case:

> 19. This condemnation action does not involve a taking of less than an entire tract of land; all 14 lots in the "Eno West Fork" subdivision are affected by the taking and have been, in their entirety, condemned by the Town.

This finding of fact is supported by competent evidence in the record. Therefore, we decline plaintiff's invitation to extend the application of N.C.G.S. § 40A-67 to the facts of this case. The order of the trial court is affirmed.

Affirmed.

Judges MARTIN and TIMMONS-GOODSON concur.